UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

VRG LINHAS AÉREAS S.A.,

    Petitioner,

    v.

MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS II L.P. and
MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.,

    Respondents.

---------------------------------------------------------------x

No. 11 Civ. 00198 (MGC)

## **DECLARATION OF DANIEL CALHMAN DE MIRANDA**

I, Daniel Calhman de Miranda, hereby declare as follows:

1. I am a partner of Mattos Filho, Veiga Filho, Marrey Jr. e Quiroga Advogados and acted as counsel to VRG Linhas Aéreas S.A. (as successor in interest to GTI S.A., "VRG") in the case captioned as ICC No. 15,372/JRF (the "Arbitration"). I submit this declaration to address certain clarifications that the Tribunal issued in the Arbitration and certain appeals regarding the Arbitration Award that Respondents MatlinPatterson Global Opportunities Partners II L.P. and MatlinPatterson Global Opportunities Partners (Cayman) II L.P, (together, "MP") have taken in Brazil.

**Clarifications to the Tribunal's Decisions**

2.      Following the Tribunal's Partial Award on jurisdiction, VRG and VoloLogistics LLC sought clarifications by the Tribunal of certain aspects of the Partial Award, pursuant to ICC Rule 29 (in effect at that time). In issuing its clarification decision on 2 July 2009, the Tribunal held that the scope of its authority to clarify its decision would be governed by Brazilian Arbitration Law, which according to the Tribunal, allows a broader scope for clarification than the ICC Rules do. The Tribunal took the view that this meant that in deciding a request for clarification, it would consider not only clerical, computational or typographical errors, and interpretations of ambiguities (as provided for in the ICC Rules), but it would also address any points that it had omitted in reaching its decision.

3.      Following the Tribunal's Final Award in the Arbitration, VarigLog sought clarification on certain aspects of the decision.

4.      In response to the Tribunal's invitation to the parties to comment on VarigLog's request, MP responded that it did not have any comments on VarigLog's request for interpretation and correction of the Final Award.

5.      Again, the Tribunal held that Brazilian Arbitration Law applied to the scope of its authority to clarify its Award, such that the Tribunal believed it could clarify matters of omission.

### Enforceability of the Award

6.     Since the seat of the arbitration proceedings was São Paulo, the Tribunal's 2 September 2010 Final Award is considered a domestic award under Brazilian law and became immediately enforceable upon its issuance.  Article 31 of the Brazilian Arbitration Act provides that "the arbitral award shall have the same effect on the parties and their successors as a judgment issued by a State court, and if it includes an obligation for payment, it shall constitute an enforceable instrument."

### Recent Ruling for VRG by São Paulo's Court of Appeals

7.     On 16 October 2012, the Court of Appeals of the State of São Paulo, through its Second Special Chamber for Business Law, rejected MP's arguments for setting aside the Award, and upheld the 1 July 2011 decision of the first instance 8th Central Civil Court of the Judicial District of São Paulo.  A true and correct copy of this decision is attached hereto as Exhibit 1.  It is accompanied by an English translation with a certificate of the translator; I have not independently reviewed the translation.

8.     The Court of Appeals is the highest court of the State of São Paulo.  In addition to serving as the ultimate instance on issues of State law, the Court exercises appellate jurisdiction over decisions taken by state trial courts, including with respect to issues of federal law, such as contract law, arbitration law, and rules of civil procedure.  The state courts have residual jurisdiction for all matters that are not specifically reserved for federal courts, which generally have jurisdiction over disputes in which the Federal

Government is an interested party, subject to detailed constitutional and statutory rules apportioning jurisdiction.

9.     As the highest state court of the State of Brazil with the largest population, greatest economic activity and most important financial center, the São Paulo Court of Appeals is the biggest and arguably the most authoritative among the 27 state appellate courts in Brazil. It is located in the City of São Paulo, one of the world's leading financial centers. The Court was founded in 1874 and is today composed of 360 appellate judges. The Court's Special Chambers for Business Law were created in 2011 and are composed of judges who are individually elected by a special chamber (the *Órgão Especial*), which in turn is composed of the Court's Chief Judge, the 12 most senior members of the Court and 12 additional members of the Court elected by the other members.

**Denial of MP's Appeal to Brazil's Superior Court of Justice**

10.    A party can appeal the Court of Appeals' decisions on certain limited grounds to the Superior Court of Justice ("STJ"), the highest appellate court for non-constitutional issues of federal law, by filing a so-called special appeal (a *recurso especial*), or to the Federal Supreme Court ("STF"), the highest appellate court for constitutional issues, by filing a so-called extraordinary appeal (*recurso extraordinário*). In accordance with the Brazilian Rules of Civil Procedure (Law No. 5,869 of 1973), the Chief Judge or the Deputy Chief Judge of the Court of Appeals must review whether the appealing party has met the requirements for these exceptional appeals (cases involving violation of federal

4

law or divergent case law). If a special appeal to the STJ is admitted, the STJ's review is limited to questions of law.

11.     On 6 February 2013, MP filed a special appeal of the Court of Appeals' decision to the STJ. On 7 November 2013, the Chief Judge for Private Law of the Court of Appeals ruled that MP failed to satisfy the requirements for a special appeal to the STJ. A true and correct copy of the STJ's decision is attached hereto as Exhibit 2. It is accompanied by an English translation with a certificate of the translator; I have not independently reviewed the translation.

12.     While MP is entitled to file a further appeal (*agravo*) of the Chief Judge's decision barring the special appeal, for consideration by a single judge of the STJ, it is statistically unlikely that MP would prevail. Publicly available statistics report that in 2012 a STJ judge ruled in favor of the appellant in only 8.79% of appeals against the decisions of the Chief Judges of state courts barring a special appeal. *See* the 2012 Statistical Report of the STJ (available at http://www.stj.jus.br/webstj/Processo/Boletim/?vPortalAreaPai=183&vPortalArea=584). An appellant can attempt a final appeal to a panel of STJ judges, but these appeals are successful in only 7.05% of the cases, according to the 2012 Statistical Report of the STJ.

6

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on 3 December 2013

Daniel Calhman de Miranda